IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

Marty Green,

Plaintiff,

v.

CIVIL ACTION FILE
NO. 4:06-CV-0188-HLM

RBS National Bank,

Defendant.

# ORDER

This case is before the Court on Defendant's Motion for Summary Judgment [42], Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Lee Narwold [73], Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Amy D'Addetta [74], Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Raymond Klos [75],

Defendant's Motion to Strike Plaintiff's Response and Objections to the Declaration of Steven Newnom [76], Defendant's Motion to Strike Plaintiff's Response and Objections to the Declaration of Latonya Munson [77], and Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Kim Hughes [78].[1]

---

[1]Plaintiff filed several "responses and objections" to affidavits filed by Defendant. (Docket Entry No. 59 (Resp. & Objs. to Aff. of Amy D'Addetta); Docket Entry No. 60 (Resp. & Objs. to Aff. of Kim Hughes); Docket Entry No. 61 (Resp. & Objs. to Aff. of Latonya Munson); Docket Entry No. 62 (Resp. & Objs. to Aff. of Steven Newnom); Docket Entry No. 63 (Resp. & Objs. to Aff. of Raymond Klos); Docket Entry No. 64 (Resp. & Objs. to Aff. of Lee N. Narwold).) In those responses and objections, Plaintiff disputes, paragraph by paragraph, each statement made by the individuals providing the affidavits. As an initial matter, the Court notes that it is neither necessary nor appropriate to file "responses" to affidavits. In any event, the Court has reviewed the objections to the affidavits, and concludes that the objections do not warrant disregarding the affidavits. To the extent that the affidavits contain legal conclusions, however, the Court will disregard those portions of the affidavits. The Court therefore denies as moot the various Motions to Strike filed by Defendant concerning Plaintiff's Responses and Objections to the affidavits.

The Court also observes that Defendant filed an affidavit of its counsel, Henry Chalmers, in support of its Motion for Summary



AO 72A
(Rev.8/82)

Judgment. Rule 3.7 of the Georgia Rules of Professional Conduct, however, provides, in relevant part:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Ga. Rules of Prof'l Conduct R. 3.7(a). Defendant has not demonstrated that any of the three exceptions to the rule prohibiting a lawyer from acting as both a witness and as an advocate in the same case apply here. Consequently, the Court has not considered the Affidavit by Attorney Chalmers in connection with Defendant's pending Motion for Summary Judgment.

Similarly, Defendant filed a number of Second Affidavits of witnesses. (Docket Entry No. 79 (Second Affidavit of Amy D'Addetta), 80 (Second Affidavit of Raymond Klos), 81 (Second Affidavit of Steven Newnom), 82 (Second Affidavit of Latonya Munson).) Those Second Affidavits did not affect the Court's ruling on the Motion for Summary Judgment.



AO 72A
(Rev.8/82)

# I. Background

## A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. Harris v. Coweta County, Ga., 433 F.3d 807, 811 (11th Cir. 2005), rev'd on other grounds, 127 S. Ct. 1769 (2007). This statement does not represent actual findings of fact. Jones v. Am. Gen. Life Ins. Co., 370 F.3d 1065, 1069 n.1 (11th Cir. 2004) (citing Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1271 n.9 (11th Cir. 2001)). Instead, the Court has provided the statement

simply to place the Court's legal analysis in the context of this particular case or controversy.[2]

---

[2]Plaintiff completely failed to respond to any of Defendant's Statements of Material Facts. Local Rule 56.1B(2) states, in relevant part:

> A respondent to a summary judgment motion shall include the following documents with the responsive brief:
>
> a. A response to the movant's statement of undisputed facts.
>
> (1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.
>
> (2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).

### 1. History of the Ownership of the Account

In approximately March 1999, Plaintiff opened a credit card account (the "Account") with People's Bank. (Def.'s Statement of Material Facts ("DSMF") ¶ 1; Dep. of Pl. at 27-28; Aff. of Lee Narwold ¶ 4; Aff. of Amy D'Addetta ¶ 4.) People's Bank owned the Account until approximately May 2004, when People's Bank sold the Account and many of its other credit card accounts to Citizens Bank of Rhode Island.

---

(3) The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response.

(4) The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed.R.Civ.P 56(f).

N.D. Ga. R. 56.1B(2)a. Plaintiff thus is deemed to have admitted those Statements. Alternatively, the Court's own, independent review of the evidence in the record demonstrates that the evidence supports the version of the facts set forth in Defendant's Statement of Material Facts.



AO 72A
(Rev.8/82)

(DSMF ¶ 2; D'Addetta Aff. Exs. B-C.) Citizens Bank retained the Account and the other credit card accounts for approximately one year. (DSMF ¶ 4; D'Addetta Aff. Ex. E.) No prohibitions existed against People's Bank's sale of the Account to Citizens Bank. (DSMF ¶ 5.) The record in this case indicates that a letter was sent to Plaintiff notifying Plaintiff of the sale of the Account to Citizens Bank. (Id.; D'Addetta Aff. Ex. D.)

In March 2005, Citizens Bank sold a subset of its credit card accounts, including the Account, to Defendant. (DSMF ¶¶ 3-4.) Defendant did not purchase all, or even most, of Citizens Bank's other assets, including traditional banking assets such as deposit accounts, real estate, commercial loans, consumer loans, and investments. (Id. ¶ 3.) Citizens Bank continued to perform banking functions, and continued

to issue and service commercial credit card and debit card accounts after the partial asset sale to Defendant. (Id.)

No prohibitions existed against Citizens Bank's sale of the Account to Defendant. (DSMF ¶ 6.) The record in this case indicates that a letter was sent to Plaintiff notifying Plaintiff of the sale of the Account to RBS. (Id.; D'Addetta Aff. Ex. F.)

### 2. History of Activity on the Account

Shortly after opening the Account, Plaintiff transferred over $14,000 of accumulated debt onto the Account. (DSMF ¶ 7; Pl. Dep. at 33-34, 40; Narwold Aff. ¶ 7.) With one brief exception, Plaintiff continued to maintain a large balance on the Account for as long as the Account existed. (DSMF ¶ 7; Pl. Dep. at 33-34, 40; Narwold Aff. ¶ 14.)



AO 72A
(Rev.8/82)

Plaintiff generally paid only the minimum amounts due on the Account, and made his payments after the due date listed on the statements for the Account. (DSMF ¶ 8; Pl. Dep. at 48-51, 53, 58, 131.) Plaintiff made those payments, however, before what Plaintiff assumed was the latest possible date before which Plaintiff could make payments without being reported as "late" to the consumer reporting agencies. (DSMF ¶ 8; Pl. Dep. at 48-51, 53, 58, 131.)

In November 2002, People's Bank administratively closed the Account. (DSMF ¶ 9; Pl. Dep. at 79; Narwold Aff. ¶ 15.) During that period, Plaintiff could not make additional purchases on the Account. (DSMF ¶ 9; Pl. Dep. at 79; Narwold Aff. ¶ 15.) Plaintiff generally continued to pay the minimum amount due on the Account until September 2004. (DSMF ¶ 10; Pl. Dep. at 53.)



AO 72A
(Rev.8/82)

Plaintiff filed for bankruptcy over one year later. (DSMF ¶ 11; Pl. Dep. at 87, 93.) The amount that Plaintiff owed on the Account was discharged in the bankruptcy proceeding. (DSMF ¶ 11; Pl. Dep. at 87, 93.)

### 3. Provisions of the Account Agreements

Plaintiff's Account agreement with People's Bank stated, in relevant part, that Plaintiff "must make a payment every month that you owe a balance to People's Bank on your account," and that he "must make at least the minimum payment." (DSMF ¶ 12; D'Addetta Aff. Ex. A.) The agreement for the Account also stated that a "default" would occur under the agreement if Plaintiff failed "to make a minimum payment by the payment due date shown on your account statement" or breached any other promise made in the agreement. (DSMF ¶ 13; D'Addetta Aff. Ex. A.) The

agreement stated that, in connection with disputes, if Plaintiff failed "to pay the amount that Peoples Banks thinks you owe, People's Bank may report you as delinquent." (DSMF ¶ 14; D'Addetta Aff. Ex. A.) Plaintiff's agreements with Citizens Bank and RBS National Bank for the Account contained similar provisions. (DSMF ¶ 15; D'Addetta Aff. Exs. D & F.)

Plaintiff received an account statement for his Account each month that the Account remained open. (DSMF ¶ 16; Pl. Dep. at 37-40, 50-51, 58; Narwold Aff. Ex. G.) The account statements listed, among other things, the Closing Date for the statement's billing cycle–that is, the last date through which charges and payments appeared on the statement. (DSMF ¶ 16; Pl. Dep. at 37-40, 50-51, 58; Narwold Aff. Ex. G.) The account statements also listed the

New Balance for the Account, the Minimum Payment Due on the New Balance, and the Payment Due Date, or date by which the Minimum Payment was due. (DSMF ¶ 16; Pl. Dep. at 37-40, 50-51, 58; Narwold Aff. Ex. G.) According to Defendant, if Plaintiff failed to make the Minimum Payment Due by the Payment Due Date, Plaintiff would be considered in default and, under the agreement governing the Account, could be reported to the consumer reporting agencies as delinquent. (DSMF ¶ 17; Narwold Aff. ¶¶ 17-18 & Ex. A.) Plaintiff contends that personnel with People's Bank and with Defendant informed him that he would not be reported to the consumer reporting agencies as delinquent so long as he paid the Minimum Amount Due within two billing cycles or sixty days after its due date. (Pl. Dep. at 56-57, 70.)

Defendant's records indicate that Plaintiff was late in making the Minimum Payments on the Account on thirty-two separate occasions. (DSMF ¶ 18; Narwold Aff. Ex. G.) According to Defendant, Plaintiff could have been reported to the consumer reporting agencies as delinquent in each of those instances under the Agreements governing the Account. (DSMF ¶ 19; Narwold Aff. ¶¶ 18, 20, 22 & Exs. A, D.) Plaintiff disputes that he was late in making the payments, and argues that agents of People's Bank and Defendant told him that he would not be reported to the consumer reporting agencies as delinquent unless he paid the minimum payment due more than two billing cycles or more than sixty days after its due date. (Pl. Dep. at 56-57, 70.) Plaintiff testified, however, that he made certain payments after the due dates listed on the statements for



AO 72A
(Rev.8/82)

the Account. (DSMF ¶ 20; Pl. Dep. at 147-48, 169-72, 182, 184-86, 306-07.)

Defendant's records indicate that, on at least six occasions, Plaintiff failed to make the Minimum Payment Due for two complete billing cycles and for more than sixty days. (DSMF ¶¶ 22-63; Narwold Aff. Ex. G.) According to Defendant, Plaintiff was reported to the consumer reporting agencies only for six late payments. (DSMF ¶ 22; Narwold Aff. ¶ 23.)

In approximately July 2004, after purchasing the Account, Citizens Bank provided one or more of the consumer reporting agencies with historical data concerning the payment status on various credit card accounts, including the Account. (DSMF ¶ 64; Narwold Aff. ¶ 25; Aff. of Kim Hughes ¶ 9; Decl. of Steven Newnom ¶¶ 9-10.)



AO 72A
(Rev.8/82)

According to Defendant, this was a standard practice at Citizens Bank and among other creditors. (DSMF ¶ 65; Narwold Aff. ¶ 25.)

The data that Citizens Bank provided including information on some of Plaintiff's payments on the Account that were late by two billing cycles and for more than sixty days. (DSMF ¶ 66; Narwold Aff. ¶¶ 23, 25; Newnom Decl. ¶¶ 9, 11-12, 15 & Exs. B-E; Hughes Aff. ¶ 9.) Some or all of that information later appeared on credit reports that the consumer reporting agencies issued concerning Plaintiff. (DSMF ¶ 66; Narwold Aff. ¶¶ 23, 25; Newnom Decl. ¶¶ 9, 11-12, 15 & Exs. B-E; Hughes Aff. ¶ 9.)

According to Defendant, for a brief period of time after the sale, some of Plaintiff's payment information on the Account was reported to the consumer reporting agencies



AO 72A
(Rev.8/82)

under the People's Bank name, and some was reported under the Citizens Bank name. (DSMF ¶ 67; Aff. of Raymond Klos ¶ 5.) According to Defendant, this reporting occurred as a result of the conversion process from People's Bank to Citizens Bank. (DSMF ¶ 68; Klos Aff. ¶ 5.) Defendant maintains that Citizens Bank did not create a duplicate account for Plaintiff, and did not change information concerning Plaintiff's account. (DSMF ¶ 69; Klos Aff. ¶ 6; Narwold Aff. ¶ 26.)

According to Defendant, prior to Citizens Bank's purchase of Plaintiff's account, the late payment information either had not been reported by People's Bank to the consumer reporting agencies, or the consumer reporting agencies had suppressed the late payment information they received from People's Bank concerning the Account.



AO 72A
(Rev.8/82)

(DSMF ¶ 73; Aff. of Latonya Munson ¶¶ 9-10; Hughes Aff. ¶¶ 8-9; Newnom Decl. ¶ 8.) Consequently, even though Plaintiff made approximately thirty-two late payments, including some payments that were late by two billing cycles and by more than sixty days, the late payments did not appear on Plaintiff's credit reports at that time. (DSMF ¶ 74; Munson Aff. ¶¶ 9-10; Hughes Aff. ¶¶ 8-9; Newnom Decl. ¶ 8.) Neither Citizens Bank nor Defendant made the decision to suppress, or not report, the information. (DSMF ¶ 75.) According to Defendant, neither Citizens Bank nor Defendant could have exercised control over that decision, as they had not yet purchased the Account. (Id.)

### 3. Complaints Concerning the Account

In August 2004, Plaintiff complained to Citizens Bank that he had never made late payments on the Account, and



AO 72A
(Rev.8/82)

requested that the Account's information not be reported under the names of two different creditors. (DSMF ¶ 70; Klos Aff. ¶ 7.) Citizens Bank investigated Plaintiff's complaint, and confirmed that Plaintiff had made late payments. (DSMF ¶ 71; Klos Aff. ¶ 8; Narwold Aff. ¶ 23.) Citizens Bank also contacted the consumer reporting agencies within thirty days of receiving Plaintiff's request, and instructed the consumer reporting agencies to remove the People's Bank name and to report all of Plaintiff's payment information under the Citizens Bank name only. (DSMF ¶ 72; Klos Aff. ¶ 9.) Ultimately, six late payments were reported concerning the Account. (DSMF ¶ 76; Newnom Decl. ¶¶ 9, 11, 15; Hughes Aff. ¶ 9.)

The evidence in the record indicates that Experian, a consumer reporting agency, notified Citizens Bank only one

time of a formal dispute initiated by Plaintiff as to the Account. (DSMF ¶ 77; Hughes Aff. ¶¶ 9-10, 12.) The evidence further indicates that once Experian notified Citizens Bank of the dispute, Citizens Bank investigated the dispute and reported its findings to Experian the very next day. (DSMF ¶ 77; Hughes Aff. ¶¶ 9-10, 12.) The evidence also shows that Experian provided no other notifications to Citizens Bank or to Defendant concerning a dispute initiated by Plaintiff concerning the Account. (DSMF ¶ 78; Hughes Aff. ¶¶ 9-10, 12.)

The evidence in the record indicates that Trans Union, LLC ("Trans Union"), a consumer reporting agency, notified Citizens Bank only two times of formal disputes initiated by Plaintiff as to the Account. (DSMF ¶¶ 79-80; Newnom Decl. ¶¶ 13, 16, 18.) The evidence further indicates that, on both

occasions, once Trans Union notified Citizens Bank of the dispute, Citizens Bank investigated the dispute and reported its findings to Trans Union within eight or fewer days after Plaintiff initiated the dispute. (DSMF ¶ 80; Newnom Decl. ¶¶ 13-18.) The evidence also shows that Trans Union provided no other notifications to Citizens Bank or to Defendant concerning a dispute initiated by Plaintiff concerning the Account. (DSMF ¶ 81; Newnom Decl. ¶ 18.)

The evidence also indicates that Equifax never notified Citizens Bank or Defendant of a dispute filed by Plaintiff concerning the Account, and that Equifax has no record of any such dispute having been initiated by Plaintiff. (DSMF ¶ 82; Munson Aff. ¶¶ 12-13.)

## B. Procedural Background

On August 14, 2006, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis. (Docket Entry No. 1.) On that same day, the Court granted Plaintiff's Motion for Leave to Proceed In Forma Pauperis, and the Clerk filed Plaintiff's Complaint. (Order of Aug. 14, 2006; Docket Entry No. 3 (Compl.).)

Plaintiff's Complaint states, in its entirety:

> On August 12, 2004 I experienced Credit Fraud.
>
> RBS National Bank[] created a duplicate account to my Peoples Bank account, changed the information such as the date of the reporting, and my pay history and furnished this information to the credit bureau.
>
> Upon dispute process, RBS National Bank verified this information as correct with the credit bureau.



AO 72A
(Rev.8/82)

At the same time, my account with Peoples Bank was verified in the same manner, and I immediately suspected fraudulent activity.

My perfect credit file was unjustly reported as late, ruining my credit. RBS National Bank claims to have purchased my account from Peoples Bank, but had never furnished a validation of debt or notice of transfer.

I tried diligently to repair this damage. RBS National Bank would not remove the information from my credit file, so I filed several disputes, I filed with the FDIC, the Better Business Bureau, I wrote to the Credit Reporting Agencies for help. I faxed and mailed letters to RBS National, Citizens, and Peoples Bank officials, and worked very hard to urge compliance with the Fair Debt Reporting Act, the Bank refused.

The negative information was only removed after Lee Narwold, VP of Citizens Bank met with me in person on March 10, 2005. Mr. Narwold



AO 72A
(Rev.8/82)

apologized for the countless errors and we reviewed the information to find that the bank had indeed created my family's financial distress. He agreed to find out the exact terms of the activity, but never produced reasons behind the created and duplicate account. All information was removed from my credit file as if it never existed before I returned from our meeting.

I utilized my excellent credit for my family security, and our income. I was no longer able to operate my business which relied on my perfect credit rating, and the ability to secure business loans. My business was dissolved after our reserves ran out after 90 days of investigation. My family has since lost our homes, business, and all family security. We no longer have health care, nor retirements. This Bank error, and the non compliance within the Law to correct the error has caused us direct damages in excess of $2,000,000.

Prayer for Relief:



AO 72A
(Rev.8/82)

> I am seeking full reimbursement for our losses suffered as the result of both credit fraud and violations of the Fair Debt Reporting Act in the sum of $6,000,000 as allowed: § 616. Civil liability for willful noncompliance [15 U.S.C. § 1681n]
>
> I am seeking punitive damages in the highest amount that court will allow as well as reimbursement for all reasonable court costs and attorneys fees.

(Compl. at 1-3.)

On December 26, 2006, Defendant filed a Motion to Dismiss Plaintiff's Complaint. (Docket Entry No. 6.) In that Motion, Defendant argued that Plaintiff failed to serve Defendant properly. (Id.) On February 5, 2007, the Court entered an Order denying the Motion to Dismiss without prejudice and directing Plaintiff to effect proper service on Defendant within sixty days. (Order of Feb. 5, 2007.)



AO 72A
(Rev.8/82)

On November 21, 2007, Defendant filed its Motion for Summary Judgment. (Docket Entry No. 42.) On December 17, 2007, the Court entered an Order directing Plaintiff to file his response to Defendant's Motion for Summary Judgment within ten days. (Order of Dec. 17, 2007.) On January 2, 2008, Plaintiff filed his response to the Motion for Summary Judgment. (Docket Entry No. 57.) The briefing process for the Motion for Summary Judgment is complete, and the Court therefore finds that the Motion is ripe for resolution by the Court.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a



AO 72A
(Rev.8/82)

judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the burden of demonstrating the satisfaction of this standard, by presenting 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)), cert. denied, 126 S. Ct. 377 (2005). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. Castleberry v. Goldome Credit Corp., 408 F.3d 773, 786 (11th Cir. 2005).



AO 72A
(Rev.8/82)

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Harris, 433 F.3d at 811. The Court also must "construe 'all reasonable doubts about the facts in favor of the non-movant.'" Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 761 (11th Cir. 2005) (quoting Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990)). Further, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). Finally, the Court does not make factual determinations. Jones, 370 F.3d at 1069 n.1 (citing Wooden, 247 F.3d at 1271 n.9).

## III. Discussion

The purpose of the Fair Credit Reporting Act ("FCRA") "is to assure consumers that reporting agencies use reasonable procedures for collecting, using, and disseminating information." Yelder v. Credit Bureau of Montgomery, L.L.C., 131 F. Supp. 2d 1275, 1280 (2001). 15 U.S.C.A. § 1681n and 15 U.S.C.A. § 1681o "provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance." Id.

The FCRA imposes two general requirements on furnishers of information to consumer reporting agencies, such as Defendant and Citizens Bank. Cisneros v. Trans



AO 72A
(Rev.8/82)

Union, LLC, 293 F. Supp. 2d 1167, 1174 (D. Haw. 2003). First, 15 U.S.C.A. § 1681s-2(a) requires a furnisher of information to provide accurate information. 15 U.S.C.A. § 1681s-2(a). Second, 15 U.S.C.A. § 1681s-2(b) imposes a duty upon a furnisher of information to reinvestigate the accuracy of information reported after the furnisher receives notice of a dispute. 15 U.S.C.A. § 1681s-2(b).

Here, Plaintiff apparently contends both that Defendant or Citizens Bank furnished inaccurate information to the consumer reporting agencies, and that Defendant or Citizens Bank failed to comply with their duty to reinvestigate information after being provided with notice of a dispute.[3] The Court addresses those arguments in turn.

---

[3]Plaintiff's Complaint simply alleges that Defendant or Citizens Bank wrongfully reported to the consumer reporting agencies that Plaintiff had an account with Citizens Bank, and that Plaintiff had made late payments on that account. To the extent that Plaintiff

Plaintiff's first argument–that Defendant or Citizens Bank furnished inaccurate information to the consumer reporting agencies by reporting that Plaintiff had an account with Citizens Bank or that Plaintiff made late payments on the account–falls under § 1681s-2(a). Section 1681s-2(a) provides, in relevant part:

> Duty of furnishers of information to provide accurate information
>
> (1) Prohibition

---

seeks to add new claims of alleged FCRA violations by Defendant or Citizens Bank, Plaintiff has not amended his Complaint to assert those claims, and may not assert those claims for the first time in his brief in opposition to Defendant's Motion for Summary Judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."). The time period for filing amendments to the Complaint has long since passed, and Plaintiff has offered no valid justification for failing to seek leave to amend his Complaint earlier to assert new claims. The Court therefore need not, and does not, consider those new claims or arguments.



AO 72A
(Rev.8/82)

(A) Reporting information with actual knowledge of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if–

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

. . .

(D) Definition

For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the

information.

(2) Duty to correct and update information

A person who–

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to



AO 72A
(Rev.8/82)

> the agency any of the information that remains not complete or accurate.

15 U.S.C.A. § 1681s-2(a). Section 1681s-2(d) states:

> The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

Id. § 1681s-2(d). The majority of courts that have addressed this issue have concluded that no private right of action exists under § 1681s-2(a). Cisneros, 293 F. Supp. 2d at 1174; Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002); Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1236-37 (D. Wyo. 2002); Scott v. AMEX/Centurion S &T, Nos. 3:01-CV-1594-



AO 72A
(Rev.8/82)

H, 3:01-CV-1595-H, 3:01-CV-1596-H, 3:01-CV-1597-H, 3:01-CV-1598-H, 3:01-CV-1599-H, 3:01-CV-1600H, 3:01-CV-1601H, 3:01-CV-1602H, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001); Fino v. Key Bank of N.Y., No. CIV. A. 00-375E, 2001 WL 849700, at *4 (W.D. Pa. July 27, 2001). The Court agrees with those courts' interpretation of the statute, and concludes that no private right of action exists for a furnisher of information's failure to provide accurate information to the consumer reporting agencies.

Plaintiff's contentions that Defendant or Citizens Bank falsely reported to the consumer reporting agencies that Plaintiff had an account with Citizens Bank, and that Plaintiff made late payments on that account, even if true, simply challenge information reported by Citizens Bank or Defendant to the consumer reporting agencies. Those



AO 72A
(Rev.8/82)

contentions thus arise under § 1681s-2(a). Because no private right of action exists under § 1681s-2(a), Plaintiff's contentions relating to Defendant or Citizens Bank allegedly falsely reporting to the consumer reporting agencies that Plaintiff had an account with Citizens Bank, and that Plaintiff made late payments on that account therefore fail. The Court consequently grants Defendant's Motion for Summary Judgment with respect to those claims.

Plaintiff also apparently contends that Defendant or Citizens Bank failed to investigate disputes concerning the Account. This claim falls under § 1681s-2(b), which requires furnishers of information that receive notice from a consumer reporting agency of a dispute filed by a consumer to investigate that dispute promptly and to report the findings of that investigation to the consumer reporting

agency promptly. The majority of the courts that have addressed the issue have concluded that a private right of action exists under this subsection. Cisneros, 293 F. Supp. 2d 1174; Aklagi, 196 F. Supp. 2d at 1193; Scott, 2001 WL 1645362, at *4; Fino, 2001 WL 849700, at *5; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 927 (N.D. Ill. 2000).

To state a cause of action under § 1681s-2(b), the plaintiff must show that the furnisher of information received notice of a dispute from a consumer reporting agency, as opposed to receiving notice from the plaintiff alone. Fino, 2001 WL 849700, at *5; Dornhecker, 99 F. Supp. 2d at 928-29 (same); see also Aklagi, 196 F. Supp. 2d at 1193 ("under the plain language of the statute, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute from

a consumer reporting agency, not just the consumer") (emphasis in original). "No cause of action against the furnisher of information accrues, therefore, until after the furnisher receives the requisite notice from a consumer reporting agency." Scott, 2001 WL 1645362, at *4.

Here, the only admissible evidence in the record demonstrates that each and every time the consumer reporting agencies notified Defendant or Citizens Bank of a dispute filed by Plaintiff concerning the Account, Defendant and Citizens Bank investigated the dispute promptly and reported the results of the investigations promptly. No genuine dispute thus remains with respect to whether Defendant or Citizens Bank complied with its duties under § 1681s-2(b). Defendant therefore is entitled to summary



AO 72A
(Rev.8/82)

judgment with respect to this claim.[4]

In sum, the Court finds that no genuine dispute remains with respect to any of Plaintiff's claims. Defendant therefore is entitled to summary judgment in its favor with respect to those claims.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant's Motion for Summary Judgment [~~55~~ 42], **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and

---

[4]Although Plaintiff may contend that he himself notified Defendant or Citizens Bank of disputes concerning the Account, no duty arose under § 1681s-2(b) unless and until Plaintiff filed a formal dispute with the consumer reporting agencies and the consumer reporting agencies notified Defendant or Citizens Bank of the dispute. Plaintiff could not trigger the duties of § 1681-s2(b) simply by notifying Defendant or Citizens Bank of a dispute himself. Fino, 2001 WL 849700, at *5; Scott, 2001 WL 1645362, at *4; Aklagi, 196 F. Supp. 2d at 1193.



AO 72A
(Rev.8/82)

Objections to the Affidavit of Lee Narwold [73], **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Amy D'Addetta [74], **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Raymond Klos [75], **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and Objections to the Declaration of Steven Newnom [76], **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of LaTonya Munson [77], and **DENIES AS MOOT** Defendant's Motion to Strike Plaintiff's Response and Objections to the Affidavit of Kim Hughes [78]. The Court **DISMISSES** this case, and **DIRECTS** the Clerk to **CLOSE**



AO 72A
(Rev.8/82)

this case.

IT IS SO ORDERED, this the 23rd day of January, 2008.

UNITED STATES DISTRICT JUDGE



AO 72A

(Rev.8/82)